## Shields Construction Co. v. Cowan.

(Decided Oct. 15, 1937.)

174

J. W. HARLAN and HENRY JACKSON for appellant.

NELSON D. RODES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

The Shields Construction Company, at the time of the filing of this action and of the transactions here involved on January 3, 1935, was a corporation performing general construction work. It had obtained a contract for the building of a bridge across Dix river at a point some five or six miles from Danville, Ky. On the day indicated Eugene Aldridge, one of its employees at work on the bridge, sustained a severe accident whereby he was seriously injured on and to many parts of his body. The accident consisted of the employee falling

from a pier, that was being constructed for the bridge, a distance of 50 or more feet, his body striking a hard surface. At that particular time one R. R. Dawson was the superintendent in immediate charge of the construction work and he was vice president of the corporation and the owner of about one-fourth of its capital stock; but P. R. Shields, who owned a greater amount of the stock, was the company's president. The latter visited the work frequently but was not present at the time Aldridge received his injuries.

Dawson immediately procured the necessary help and put Aldridge in one of the company's trucks and carried him to the Danville and Boyle County Hospital located in Danville, Ky., at which place plaintiff and appellee, Dr. J. Rice Cowan, was one of its staff physicians. He was then in attendance at the hospital in discharge of his duties as such when Dawson and his help arrived with Aldridge, the company's injured employee. A conversation occurred between plaintiff and Dawson, as well as between the latter and the chief nurse of the hospital, whereby Aldridge was received therein for treatment. He remained there for quite a while, but finally recovered sufficiently to be dismissed. Following his dismissal, and on April 12, 1935, plaintiff (Dr. Cowan) filed, as sole plaintiff, this ordinary action in the Boyle circuit court against appellant and defendant to recover the amount of an account rendered, and payment demanded, for the total cost of medical, surgical, and nursing services rendered to defendant's injured employee during his stay in the hospital. The items of that account were and are, $203 for plaintiff as operating surgeon; $68 for Dr. S. P. Hemphill, an assisting physician; $72 to Mrs. R. G. Palmer, a nurse; $96 to Miss Albert B. Mills for similar services; and $20 to Miss Ethyl Evans, anesthetist—making the total sum sued for.

It was alleged in the petition that "this plaintiff agreed with defendant to render his services to defendant for such employee, and to procure the necessary and proper nursing assistance for said employee," and that pursuant to that authority, he procured the services of the others whose claims make up the total amount sued for. Defendant demurred to the petition, which was overruled, and it then moved to strike therefrom the items of the account for services of all those contained therein other than the item of $203 claimed by the plain-

tiff, individually. The demurrer was overruled, as was also the motion to strike, followed by exceptions. The answer was a denial, and a plea of no consideration, with an express averment that Dawson was without authority to enter into the contract alleged in the petition, even if he had done so.. It was also further relied on that the parties were operating under our Compensation Act (Ky. Sts. sec. 4880 et seq.), which allowed as the maximum not more than $200 for such services to be rendered to an injured employee and for which the employer would be liable, and that in no event was defendant responsible for any sum greater than $200. The demurrer was sustained to that part of the answer, and later filed pleadings made the issues. Upon trial the jury, under the instructions submitted to it by the court, returned a verdict in favor of plaintiff for the full amount, upon which judgment was rendered, and, defendant's motion for a new trial having been overruled, it has filed a transcript of the record in this court, with a motion for an appeal.

A paragraph of the answer attempted by cross-action to bring the injured servant, Aldridge, into the case upon the theory that whatever judgment might be rendered against defendant it recover in the action from him the amount of the excess over and above the fees allowed for such services under the Compensation Act; but the court properly declined to litigate that issue between the master and the servant in this case, and in the original motion for a new trial that ruling is also complained of. In that motion the matters we have related are relied upon, but there was no complaint made therein of any evidence that the court had either admitted or refused. As above stated, the motion was overruled and the term of court was adjourned. Later, and upon the convening of the next term of the court, defendant attempted to amend its motion and grounds for a new trial by incorporating a complaint with reference to the admission and rejection of testimony, and in which it recited the testimony to which that amendment was directed. However, we are convinced that the court did not err in declining to consider that amendment, even if it possessed merit; but we are also convinced that the complained of testimony admitted by the court was properly admitted, it being a letter written by Shields, defendant's president.

The other item of evidence which it was complained

the court improperly rejected when offered by defendant was a letter dictated by G. A. McRoberts, secretary of the hospital and addressed to defandant, the date of which was January 26, 1935, in which the defendant was notified that the hospital charges had then reached the amount of $200, and it was stated that the letter was a notice to defendant of that fact which the hospital had agreed through McRoberts to give when the hospital charges had reached that sum. That letter elucidates no issue in the case. It referred to the charges of the hospital as an institution and did not involve any of the items sued for in this case. We will, therefore, pass to a consideration of the original motion for a new trial, unaffected by the later tendered amendment.

The authority of Dawson to make the contract of the nature and kind sued on (and which he admits in his testimony he did do) was and is to our minds clearly within the scope of his employment and official position, and it was later admitted, or practically so, by the letter from Shields to his indemnifying company, in which he was trying to get it to settle all of the accrued accounts for services rendered to Aldridge, including those incorporated in the account sued on, but which, it will be observed, excluded the individual account of the hospital and embraced only medical and special nursing charges.

The contention that no consideration existed for Dawson's contract with Dr. Cowan cannot be sustained, since anything is a legal consideration which is a "benefit to the promisor or a detriment to the promisee." Such types of sufficient considerations are extensively discussed in the case of Luigart v. Federal Parquetry Mfg. Co., 194 Ky. 213, 238 S. W. 758, in which many prior cases from this court are cited, one of which is Brady v. Equitable Trust Company, 178 Ky. 693, 199 S. W. 1082, 1085, in which opinion we said: "To make a binding obligation, it is not necessary that some benefit should accrue thereby to the obligor. It is sufficient if the obligee suffers some detriment or prejudice."

The obligees in this case were those who agreed with defendant to render necessary and imperative emergency services to its injured employee. Defendant may or may not have been under a legal obligation to provide or procure the rendition of them, but it solicited them in this case through and by one of its general officers and obtained a promise from the one so solicited to render

them, and which was later done in accordance with that agreement and promise. The detriment to the promisees therein consisted in the expenditure of time, talent, and ability—neither of which were they under any obligation to perform or render and might not have done without defendant's promise to pay therefor. Many other like cases are found in 5 West's Kentucky Digest, Contracts, p. 276, Key Number System 51, under the general heading of "Contracts." Likewise, "mutual promises" form a sufficient consideration to uphold contracts thereby entered into, as will be seen by cases cited in Key Number System 56 on page 279 of the same volume of the Digest. Since, therefore, the contract made by Dawson was not limited to the amount for which defendant was liable to pay under the Compensation Act, plaintiff's solicited service to Aldridge—and later performance thereof by those agreeing to do so—created a legal obligation on the part of the defendant to discharge its agreement to pay therefor.

But the remaining question in the case, i. e., the right of plaintiff, Dr. Cowan, to recover individually the items of the account sued on over and above his individual charges of $203, presents a more serious question. Defendant, as we have seen, moved the court to eliminate all of the items of the account other than that of Dr. Cowan amounting to $203, and which, if sustained, would have reduced the judgment to the extent of $256—that sum being the combined amount of the charges due to the other physician and the special nurses, with $20 for the anesthetist. The contract as proven by all the testimony in the case, as it related to the rendition of personal services to the injured servant while in the hospital, was made with the plaintiff, Dr. Cowan, and, as stated by him and substantially confirmed by Dawson (and possibly other witnesses who were present), was at most a delegation of authority to Cowan to employ for and on behalf of defendant such other help and assistance as might be required in rendering necessary surgical service to defendant's injured servant, and for which it would be liable. Dr. Cowan never undertook to perform all those services by himself alone, nor did he agree to contract in his own name and to employ such necessary assistants in the capacity analogous to that of a contractor. But he was, as we construe the contract, authorized to employ such assistance for and on behalf of defendant and for the pay-

ment therefor defendant would be liable, because of the contract entered into with the ones performing them through its agent (Dr. Cowan), specially authorized to contract for them. Indeed, it appears in the record that some of the assistants, for whose services judgment was recovered, made efforts to collect, or entered into negotiations for the recovery of, their individual accounts, and nowhere in the record is there any intimation that they looked to Dr. Cowan for the satisfaction of their asserted claims, nor could they succeed—according to our conclusion—in any action that might be instituted by them, against him for the collection of their claims. However, they could succeed (in the absence of a legal defense made thereto) in an action against defendant, since their services were rendered pursuant to an agreement made with its special agent, Dr. Cowan. Section 18 of our Civil Code of Practice expressly requires that "every action must be prosecuted in the name of the real party in interest, except as is provided in section 21." The referred to section (21) deals with actions by fiduciaries and has no bearing upon the positive requirement found in section 18, supra.

The conclusion that we have reached and so expressed not having been followed by the trial court renders our duty plain, and which is to reverse the judgment in so far as it allowed plaintiff (Dr. Cowan) to recover in his individual name the value of the services rendered by others who assisted him in his surgical and medical treatment of defendant's servant. The reversal, of course, will be of small benefit to appellant, unless it has some other defense to the claims of Dr. Cowan's assistants than the ones presented in this case. But our duty as an appellate court is to construe and apply the law as it has been written in statutes, and declared by courts, and we can see no escape from the conclusion that it was error to permit Dr. Cowan to recover the excess amount of the account which he sued on as hereinbefore pointed out.

Wherefore, the motion for the appeal is sustained and the judgment is affirmed in so far as it adjudged a recovery by Dr. Cowan for the amount of his individual services, but it is reversed as to all of the remaining portion thereof, with directions for proceedings consistent herewith. Each party will pay one-half the costs of this appeal; the whole court sitting.