# Three Point Coal Company v. Mike Santy and Workmen's Compensation Board.

(Decided May 7, 1926.)

## Appeal from Harlan Circuit Court.

Master and Servant.—Evidence held to support compensation board's finding of 50 per cent permanent partial disability, under Kentucky Statutes, section 4899, by injury to arm and shoulder.

HALL, LEE & SNYDER for appellant.

G. G. RAWLINGS for appellees.

OPINION OF THE COURT BY JUDGE GOODPASTER—Affirming.

The appellee, Mike Santy, was an employee of appellant, the Three Point Coal Company, at the time of his injury, which occurred on the 7th day of April, 1924. Both employer and employee had accepted the provisions of our Workmen's Compensation Act. At the time of his injury appellee was working in the coal mine pushing a car when his foot slipped, his shoulder struck the car and was thereby dislocated. The injury was received in the course of his employment and is therefore compensable under the provisions of the act.

Evidence was duly heard by the workmen's compensation board relative to the extent and duration of the injury, the result of which is shown by the board's order, which is as follows:

"The plaintiff sustained an accidental injury to his arm and shoulder on April 7, 1924, while in the employ of the defendant for which he filed claim for compensation. The only question for determination by the board is: The extent and duration of plaintiff's disability, all other questions having been stipulated and agreed upon at the hearing of this case.

"From the evidence the board finds that the plaintiff had a temporary total disability from April 7, 1924, to April 27, 1925; and that he has a permanent partial disability equal to that of fifty per cent to the body as a whole.

"The defendant is ordered to pay the plaintiff compensation at the rate of $15.00 per week for a period of fifty-four and six-sevenths weeks, less one week waiting period, and in addition compensation

at the rate of $6.00 per week for a period of two hundred eighty and one-seventh weeks. Plaintiff is entitled to six per cent interest on all past due payments. Defendant is entitled to credit for all compensation heretofore paid.''

The Three Point Coal Company appealed from the order of the board to the Harlan circuit court, and its petition alleges (1) that the board acted without and in excess of its powers; (2) the order, decision and award is not in conformity to the provisions of this act; (3) the findings of fact are in issue and such findings of fact do not support the order, decision and award; (4) that the defendant, Mike Santy, only claimed injury to the arm.

''That the loss of an entire arm is limited under the statute to sixty-five per cent of the average weekly wage during two hundred weeks or $2,400.00, while the attempted award of the board exceeds the value of the entire arm.''

The prayer of the petition is as follows:

''Wherefore, plaintiff prays a judgment of this court setting aside said awards, decision and order of said board and dismissing said application of said Mike Santy, at least to the extent for which he has not been paid and directing the said board to dismiss said application as to any partial, permanent disability, for its cost and for all proper relief, both general and special.''

The Harlan circuit court by its judgment rendered October 21, 1925, sustained the award of the compensation board. The Three Point Coal Company objected and excepted to the said judgment and prayed an appeal to this court, which was granted.

Dr. S. H. Rowland, physician for the Three Point Coal Company, was introduced as a witness and testified in part substantially as follows:

That Mike Santy was under his observation and treatment for a dislocated shoulder about two or three months after the injury; that there were no bones broken or fractured; it was just a dislocation—thrown out of joint; he was anaesthetized a couple of times trying to reduce the dislocation, put it back in joint; did not succeed; couldn't get it back; that witness took Santy to Lousiville, Kentucky, to a specialist, Dr. Arnold, who

operated on him and put his shoulder back in plaster and put his arm up.  And further testified as follows: "I think there is to the man as a whole a forty per cent disability right now to the whole body.  I believe he will have a sixty or seventy per cent arm after it improves. Witness was asked to explain to the board what makes that large sink in behind Santy's shoulder, and answered: "That is due to the operation, the muscle it has atrophied; there is some sink from the scar." And was then asked: "There is a large sink behind that?" Answer: "This is due in part to atrophy of the muscles."

Some of the questions asked Santy and his answers thereto are as follows:

"Q.  Tell the board whether you have ever had any trouble with the shoulder before the injury.  A. No.

"Q.  Could you use your whole arm before you got hurt?  A.  Yes, sir.

"Q.  Tell the board to what extent your, about how much is your right arm injured now.  A.  I no use it much.

"Q.  Is there anything you can do with that arm?  A.  No.

"Q.  Have you any grip in that hand, how much can you lift with that hand?  A.  No can work, no can work my arm.

"Q.  When did you go back to work?  A.  27th of April.

"Q.  You were injured on the 4th of April, were you, a year before that?  A.  April the year before.

"Q.  The use of your arm is coming back?  A. No can use.

"Q.  You can use it better than you could awhile?  A.  No can use it.

"Q.  You couldn't use it at all for awhile?  A. Use a little bit.

"Q.  Is your arm getting better about using it or is it the same as it has been?  A.  No can use.

"Q.  Can you use it better than you could awhile back?  A.  No can use it better."

Dr. N. S. Howard testified in part substantially as follows:

"Q.  Have you examined Mike Santy?  A.  Yes, sir, I did.

"Q. Did you examine his right arm and shoulder? A. Yes, sir.

"Q. From your examination and observation of this man tell the board whether or not he can do any kind of manual labor with that arm. A. I don't think he can do any with that arm.

"Q. From your examination and taking into consideration the extent of time this injury has gone, do you consider that injury permanent? A. It seems to be.

"Q. What percentage would you place upon this man as a whole by reason of the condition in which you find him now? A. I think that, so far as that arm is concerned, to take up manual labor, I don't see that it worth much to him."

In his brief counsel for appellant insists that the board was without evidence upon which to base a permanent partial disability to this man of fifty per cent.

Section 4899, Ky. Statutes, provides compensation for certain specified injuries. Among those provisions is the following: "For the loss of an arm sixty-five per cent of the average weekly wages during two hundred weeks." But the statute does not stop with the specific injuries. It goes further and provides: "In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employee and age at the time of injury; the compensation paid therefor shall be sixty-five per cent of the average weekly earnings of the employee, but not less than $5.00 nor more than $12.00, multiplied by the percentage of disability caused by the injury, for such period as the board may determine, not exceeding three hundred and thirty-five weeks nor a maximum of $4,000.00."

It will be seen that the appellee did not claim injury to the arm alone but to both his arm and his shoulder. The evidence above quoted shows that the appellee was twice anaesthetized and each time there was an unsuccessful attempt to put his shoulder in place, and that an operation was necessary and was had upon his shoulder, which left the shoulder in a badly damaged condition.

In the case of Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 217, we find this language: "Unless there is an entire absence of substantial or credible evidence to support the board's finding of facts, this court, in the absence of fraud, can not disturb it."

It is our opinion that the board had sufficient evidence to support its finding. The evidence was convincing of the temporary total disability found by the board and the board's finding that he has a permanent partial disability equal to that of fifty per cent to the body as a whole is supported by substantial evidence.

As the action of the workmen's compensation board was in accord with the view herein expressed, it follows that the award was properly affirmed by the trial court.

The judgment of the court below is affirmed. The whole court sitting.